**In re the Marriage of Jeffrey R. FUEHRER, Appellant–Respondent,**

v.

**Suzanne M. FUEHRER, Appellee–Petitioner.**

No. 32A01–9410–CV–345.

Court of Appeals of Indiana.

June 12, 1995.

Rehearing Denied Aug. 16, 1995.

Russell T. Clarke, Jr., Emswiller, Williams, Noland, Clarke, P.C., Indianapolis, for appellant.

Gloria K. Grinnan, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Jeffrey R. Fuehrer [Husband] brings this appeal from the decree which dissolved his marriage to Suzanne M. Fuehrer [Wife]. Husband raises four issues, which we restate and consolidate into three. We reverse in part and affirm in part.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that this was a three-year, childless marriage. Additional facts are supplied as necessary.

## DECISION

 Our review of the trial court's judgment is governed by Ind.Trial Rule 52. The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357. We apply a two-tiered standard of review to special findings entered by the trial court. *Department of Public Welfare v. Couch* (1992), Ind.App., 585 N.E.2d 1337, 1339. First, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. *Id.* Special findings and the judgment which rests upon those findings will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings, or that the judgment is unsupported by the findings. *Id.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Flansburg v. Flansburg* (1991), Ind.App., 581 N.E.2d 430, 435, *trans. denied.*

## I.

Whether the trial court erred in including Wife's debts for medical services and other necessaries incurred after the date of final separation in the marital pot?

During the separation period, Wife was diagnosed as having a rare and deadly form of cancer. On Wife's motion, the trial court held an emergency hearing on the issue of temporary spousal support and ordered Husband to increase his temporary spousal maintenance payments from $100.00 to $240.00

per week and continue to maintain her health insurance. Ultimately, Husband made 24 of the 26 payments ordered before the divorce was final.

Wife had extensive surgery to remove a malignant tumor, at least four series of chemotherapy treatments, and one course of radiation treatment. Understandably, she missed a great deal of work. Although Husband's temporary spousal maintenance payments and health insurance helped, Wife accumulated approximately $11,000.00 in medical bills and another $3,000.00 in credit card debt for the purchase of clothing and other necessaries.

In the final plan of distribution, the trial court ordered that these debts, incurred by Wife after the dissolution petition had been filed, were debts of the marriage and were to be paid out of marital funds. The trial court then split the marital estate 50–50. Thus, Wife's post-separation debts were to be paid out of the marital pot effectively reducing Husband's share. *See DeMoss v. DeMoss* (1983), Ind.App., 453 N.E.2d 1022, 1025.

 Generally, the marital pot closes on the date the dissolution petition is filed. Ind. Code 31–1–11.5–11(a) & (b); *Schueneman v. Schueneman* (1992), Ind.App., 591 N.E.2d 603, 609.[1] Therefore, debts incurred by one party after the dissolution petition has been filed, including debts for medical expenses, are not to be included in the marital pot. *Id.* at 609, 610.

Wife argues that our supreme court's decision in *Bartrom v. Adjustment Bureau, Inc.* (1993), Ind.App., 618 N.E.2d 1, has created another exception to this general rule with respect to debts incurred for the provision of necessaries during the separation period. *Bartrom,* however, is inapposite to the case at bar. *Bartrom* was not a dissolution action; it was a collection action brought by a creditor against a wife to recover the debts related to medical expenses incurred by her late husband (whose estate could not satisfy

1. In *In Re Marriage of Adams* (1989), Ind., 535 N.E.2d 124, 126–127, our supreme court carved out an exception to the requirement, established by our legislature under I.C. 31–1–11.5–11(a) & (b), that the pot close on the date of final separation. *See Skirvin v. Skirvin* (1990), Ind.App., 560 N.E.2d 1263, 1265, *trans. denied.* With respect to pension interests acquired by the joint efforts of the spouses, the pot closes on the date the decree of dissolution is entered. *Id.; Kirkman v. Kirkman* (1990), Ind., 555 N.E.2d 1293, 1294.

the debts) after the dissolution petition had been filed. *Id.* at 2–3. In *Bartrom,* our supreme court held that the financially superior spouse had limited, *secondary* liability for the medical expenses her spouse had incurred during the separation period under the doctrine of necessaries. *Id.* at 8. The *Bartrom* court noted that the doctrine of necessaries did not create a free-standing cause of action for the financially inferior spouse to compel the financially superior spouse to fulfill his or her duty of support. *Id.* at 3. Each spouse was to remain primarily liable for his or her independent debts. *Id.* at 8.

■ We do not interpret *Bartrom* as changing the long-standing, general rule, imposed by our legislature under I.C. 31–1–11.5–11(a) & (b), that, *in dissolution actions,* the marital pot closes on the date the dissolution petition is filed. Instead, *Bartrom* merely holds that a *creditor* may impose limited, *secondary* liability upon the financially superior spouse for the debts, related to the provision of necessaries, incurred by the financially inferior spouse during the separation period under the doctrine of necessaries. 618 N.E.2d at 8.

■ Therefore, we hold the trial court's inclusion of the Wife's post-separation debts in the marital pot was clearly erroneous. *See Schueneman,* 591 N.E.2d at 609. Accordingly, we reverse and remand with instructions that the trial court exclude these debts from the marital pot and, if necessary, effect a modified plan of distribution.

## II.

Whether the trial court's award of permanent spousal maintenance was clearly erroneous?

As a part of its Decree, the trial court awarded Wife spousal maintenance in the amount of $100.00 per week until further order of the Court, noting that maintenance would be necessary until Wife actually returned to full-time employment on a sustained basis. The trial court based its award of spousal maintenance on its finding that Wife was still weak from her illness and not able to be employed on a full-time basis.

Husband argues the evidence demonstrates that Wife's cancer was in remission and she was capable of working the same amount of hours she had worked before her illness. Therefore, Husband asserts, the trial court's award of permanent spousal maintenance was clearly erroneous.

■ An award of permanent spousal maintenance may be awarded under Ind. Code 31–1–11.5–11(e) which reads:

A court may make the following findings concerning maintenance:

(1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support [herself] is materially affected, the court may find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court.

The divorce court may make an award of spousal maintenance upon the finding that a spouse's self-supporting ability is materially impaired. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 655. The divorce court's power to make an award of maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Id.* The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal. *Temple v. Temple* (1975), 164 Ind.App. 215, 328 N.E.2d 227, 230, *trans. denied.*

■ In the present case, the evidence in the light most favorable to the trial court's judgment reveals that, during the separation period, Wife experienced a serious illness, had major surgery, chemotherapy, and radiation treatments. Although the cancer had gone into remission, there was a very high probability that it would return. At the time of the final hearing held in June of 1994, wife's doctor had released her to work on a limited basis—part time, only four to six hours a day, and then, "only if she can handle it." Wife had returned to work two or three

days per week and had been coming home completely exhausted.

The trial court's award of maintenance is amply supported by evidence that Wife's illness has left her incapacitated to the extent that her ability to support herself is materially affected. The trial court's award is not clearly against the logic and effect of the facts and circumstances, and we find no error.

### III.

Whether the trial court erred by distributing the marital estate equally?

The first day of the final hearing was held on August 23, 1993. On that date, Wife, as Petitioner, completed her testimony in which she conceded that Husband should receive the lion's share of the marital estate due to his superior pre-marital contributions. Due to insufficient time, the hearing was continued.

However, soon thereafter, Wife was diagnosed with cancer and had extensive surgery and other treatments (as discussed earlier). Wife filed an amended petition of dissolution requesting the trial court to award her permanent spousal maintenance and attorney's fees. When trial reconvened, Wife was permitted to reopen her case on this limited basis. However, Wife's testimony went beyond this limited scope and she was permitted, over Husband's objection, to request that the trial court award her over 50% of the marital estate. As noted earlier, the trial court's general plan of distribution under the decree was to split the pot equally.

Husband argues that the trial court erred in permitting Wife to reopen her case on the issue of the distribution of marital property and in effecting an equal distribution of property. Husband argues that Wife's testimony regarding the division of property elicited on the first day of trial was binding and the reopening of her case was to be limited to the issues of permanent spousal maintenance and attorney fees. Thus, Husband argues that the trial court erred by not effecting Wife's original request by awarding Husband the lion's share of the estate.

Even after a party has rested his or her case, the trial court has discretion to permit a party to present additional evidence. *In Re Paternity of Seifert* (1993), Ind.App., 605 N.E.2d 1202, 1207, *trans. denied.* The presumption that the trial court correctly followed the law is one of the strongest presumptions applicable to our consideration of a case on appeal. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361, 364.

In the present case, Wife's diagnosis of cancer and the ensuing surgery and treatments which took place after she had rested her case dramatically altered the equities involved in this case. Wife's medical condition significantly impacted her economic circumstances, earnings, and earning ability, factors which impact upon the trial court's determination of a just and reasonable division of marital property as prescribed under Ind.Code 31–1–11.5–11(c)(3) & (5). Therefore, the trial court abused no discretion in permitting Wife to reopen her case to request a larger share of the marital pot than she had previously requested.

Under I.C. 31–1–11.5–11(c), which establishes the presumption that an equal division of the marital estate is just and reasonable, the party opposing an equal division has the burden of rebutting the statutory presumption. *In Re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 646. When the party bearing the burden of proof at trial receives an adverse judgment, he appeals a negative judgment. *C.F. Broughton, D.M.D., P.C. v. Riehle* (1987), Ind.App., 512 N.E.2d 1133, 1136. The party appealing from a negative judgment must show that the trial court's judgment is contrary to law. *McClure Oil Corporation v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, 553. Thus, we may reverse only when the evidence is without conflict and leads unerringly to a conclusion different from that reached by the trial court. *Id.*

Although Husband's pre-marital contributions were superior to Wife's (I.C. 31–1–11.5–11(c)(2), his earnings and earning capacity were also superior to Wife's (I.C. 31–1–11.5–11(c)(5). Therefore, we cannot

conclude that the trial court's equal division of the marital estate was clearly erroneous.

## CONCLUSION

We reverse and remand with instructions as set out under Issue I. In all other respects, we affirm.

NAJAM and HOFFMAN, JJ., concur.